ETHEL DUNN, APPELLANT, v. GUYTON E. DUNN, RESPONDENT.—216 S. W. 2d 141.

St. Louis Court of Appeals. Opinion filed December 21, 1948.

Appellant's motion for a rehearing and for modification of opinion overruled January 21, 1949.

88

*White, White & White, Samuel White* and *Alva W. Hurt* for appellant.

*Herman D. Olian* for respondent.

WOLFE, C.—This is an action for divorce wherein a decree was denied and the petition dismissed with prejudice by the trial court after hearing plaintiff's evidence. From the order denying a divorce and dismissing the case plaintiff prosecutes this appeal, which was submitted upon the brief and argument of plaintiff but taken on the record as to the defendant.

The petition is in the usual form and alleges as grounds for the divorce that the defendant's treatment of plaintiff was cruel, that he offered her numerous indignities and that the parties were separated June 26, 1944. After it was filed the attorneys for the plaintiff suggested the insanity of the defendant and the court at their request appointed a guardian ad litem for him.

The guardian ad litem filed an answer in which he asserted that the defendant was "admitted to the St. Louis City Sanitarium on June 7, 1943, and was paroled on July 20, 1943; and on June 24, 1944, said patient was returned to the institution and. has remained there continuously since that time. He was presented to the Staff on September 1, 1944, at which time a diagnosis of Schizophrenia, Paranoid Type was made, and it was recommended that he was institutional."

Upon the trial of the case plaintiff testified only to the fact and date of her marriage; the length of time she lived with her husband; her period of residence in the state of Missouri; and that there was a child born of the marriage.

Three witnesses, who were friends of the plaintiff and had visited in her home at times for a period of about five years before the separation took place, testified to cruel and brutal treatment that plain-

tiff suffered at the hands of the defendant. After submission of the case upon the above evidence the trial judge denied the divorce and dismissed the petition, stating that he did so because the defendant was insane.

Appellant urges here that upon her proof of statutory grounds for divorce, standing uncontradicted, it was the duty of the court to grant her the decree. If the question of defendant's sanity were not in the case, plaintiff's contention would be sound, for her right to a divorce is a legal right conferred upon her by statute, and when she has proven her cause by uncontroverted and uncontradicted testimony, there is nothing left to the discretion of the trial court and it becomes mandatory upon it to award the decree sought. Hess v. Hess, Mo. App., 183 S. W. 2d 560; Needham v. Needham, Mo. App., 299 S. W. 832; Alfree v. Alfree, 175 Mo. App. 344, 162 S. W. 650; Raney v. Raney, 128 Mo. App. 167, 106 S. W. 577; Morris v. Morris, 60 Mo. App. 86. However, since the defendant is admittedly insane the sufficiency of the evidence must be examined with that factor in mind.

Perhaps the first point to be investigated is the right of a husband or wife to bring suit for a divorce against an insane spouse. We have been cited to no Missouri cases that expressly affirm such a right, but there is ample authority that an insane person may be made a defendant in other types of actions. In Heard v. Sack, 81 Mo. 610, l. c. 615 (which was a suit to set aside a deed), the court said:

"Process and judgment go against the lunatic as against other parties. They should defend by attorney, or guardian *ad litem*, in the absence of a guardian proper."

Likewise in Bensieck v. Cook, 110 Mo. 173, l. c. 183, 19 S. W. 642 (which was a suit in ejectment), the court held:

"The trial court pursued the right course in appointing a guardian *ad litem* for defendant, Joseph Cook. Mitchell v. Kingman, 5 Pick. 431; Buswell on Insanity, sec. 132; Sturges v. Longworth, 1 Ohio St. 544. And the power of the court to appoint such a guardian, of necessity, concedes the power of the court, upon the proper basis of facts being presented, to render a judgment as binding on the lunatic and his property interests, as a similar judgment would be upon a sane person."

In Graves v. Graves, 255 Mo. 468, l. c. 482, 164 S. W. 496, (which was a suit in equity), it was stated:

"It is safe to say that an adjudged lunatic without a guardian, may be sued, by having personal service of summons upon him, but upon suggestion of insanity, a guardian *ad litem* should be appointed, to conduct his case under the supervision of the court. When such is done, then the judgment binds the lunatic."

Since it is settled law that an insane person not under guardianship may be sued and upon suggestion of his insanity a guardian

ad litem appointed for him, there appears to be no reason for excluding actions for divorce. The law places the insane person in about the same position as a minor (Heard v. Sack, supra), and since he has a guardian ad litem to present his defenses he is under no greater handicap as a defendant in a divorce suit than he would be in other actions against him. The great weight of authority permits the suit against an insane spouse where it appears that the acts constituting the grounds for divorce were committed by the defendant prior to his becoming insane. Fisher v. Fisher (West Va.), 46 S. E. 118; Lewis et al. v. Lewis (Okla.), 158 P. 368, 1. c. 369; Steed v. Steed (Utah), 181 P. 445; King v. King (Ky.), 283 S. W. 73; Cobb v. Cobb (Wash.), 143 P. 2d 856; Harrigan v. Harrigan (Cal.), 67 P. 506.

It must therefore be held that the defendant was properly before the court by the guardian ad litem appointed for him and that he could be held accountable in divorce for acts that he committed while sane.

This proviso that the acts complained of must have been committed while sane is an essential element in such actions. (See cases last above cited.) The reason for this is that the acts constituting the cruel treatment must be voluntary acts, as it could not be maintained that the Legislature by enacting Section 1514, R. S. Mo. 1939, Mo. R. S. A., Sec. 1514, setting forth the "causes of divorce" intended the statute to cover acts committed by one who was incapable of understanding their nature or of restraining himself from their commission. In fact the insanity of a defendant at the time the offending acts were committed is a good defense and bars a decree against him. Bethel v. Bethel, 181 Mo. App. 601, 164 S. W. 682; Crow v. Crow-Humphrey, 335 Mo. 636, 73 S. W. 2d 807; Koslow v. Taylor, 356 Mo. 755, 203 S. W. 2d 433.

In passing upon a situation similar to the one before us, it was stated in an Ohio case, Heim v. Heim, 35 Ohio App. 408, 172 N. E. 451:

"The case seems to have been tried on the theory that she was responsible for her acts until the time she was committed to the asylum, and not that she was relieved from responsibility from the time she became insane. This court cannot assent to that view. The extreme cruelty, which is a ground for divorce, means voluntary or intentional extreme cruelty, and cannot be committed by a lunatic who does not understand the nature of her acts. Divorce may, it is true, be granted as against an insane person, but only for acts committed while sane."

Appellant states that there is no evidence that the defendant was insane prior to his admission to the sanitarium in 1943. This is not elaborated upon but perhaps she seeks to infer that a presumption existed that the defendant was sane before that time. It is true that there is not a word of evidence in this case touching upon the ques-

tion of the defendant's sanity. His insanity was suggested by the plaintiff's attorneys before trial and the only information before the court on this subject is contained in the answer filed by the guardian ad litem, which avers that the defendant was confined for a period of time in an asylum a year before the separation took place.

Presumptions of sanity do exist in law but they generally arise in cases where one alleges that an act was committed while a party was insane and, in such cases the burden of proving insanity is upon the party asserting it. Fendler v. Roy, 331 Mo. 1083, 58 S. W. 2d 459; Reynolds v. Maryland Casualty Co., 274 Mo. 83, 201 S. W. 1128. No such situation is before us, for the defendant's insanity is admitted and no time is fixed by the witness who related that defendant beat the plaintiff. As far as the record reveals it may have been after his first incarceration in the asylum.

To follow the line of reasoning suggested by the appellant would have the ultimate effect of permitting one to sue an insane spouse and to obtain a divorce because of insane acts committed, since the court would be in no way enlightened as to the time the defendant became insane. Insanity is not a ground for divorce in Missouri but it would almost be made so if it were held that a divorce could be obtained because of acts arising out of it.

Where, as here, all that we know of the defendant's mental state is that he is insane and was confined in 1943 in an institution for the insane, no presumption of prior sanity favors the plaintiff, and she must assume the burden of proving that the cruel acts of which she complains were committed by the defendant while he was sane. This she did not do and the court did not err in denying the decree.

It is therefore the recommendation of the Commissioner that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of WOLFE, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *McCullen, P. J.,* and *Anderson* and *Hughes, JJ.,* concur.